*146*

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

*CAB-98-183*

U.S. COURT OF APPEALS
FILED
DEC 0 6 2001
CHARLES R. FULBRUGE III
CLERK

United States District Court
Southern District of Texas
FILED
JAN 0 3 2002
Michael N. Milby
Clerk of Court

N° 00-40504

FREDA SUSAN MOWBRAY, ALSO KNOWN AS SUSIE MOWBRAY,

Plaintiff-Appellant,

VERSUS

CAMERON COUNTY, TEXAS; BENJAMIN EURESTI, JUDGE; EDMUND CYGANIEWICZ; LUIS V. SAENZ; MENTFORD HESSKEW, "DUSTY"; GEORGE GAVITO; STEVE ROBERTSON; ESTELLA MAURICIO; JEAN MOWBRAY; JAMES MOWBRAY; MARGO MOWBRAY; AND KRISTEN MOWBRAY,

Defendants-Appellees.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

№ 00-41229

FREDA SUSAN MOWBRAY, ALSO KNOWN AS SUSIE MOWBRAY,

Plaintiff-Appellee,

VERSUS

TEXAS CAMERON COUNTY; ET AL,

Defendants,

GEORGE GAVITO,

Defendant-Appellant.

Appeals from the United States District Court
for the Southern District of Texas

Before JONES, SMITH, and DEMOSS,
  Circuit Judges.

JERRY E. SMITH, Circuit Judge:

After Fredda "Susan" Mowbray ("Mowbray") had served nine years in prison for her husband's murder, her conviction was set aside, whereupon, under 42 U.S.C. § 1983 and state law, she sued the county that had jailed her and the three prosecutors, three police officers, and the county lab technician who had participated in her trial; she also sued her husband's heirs to regain the proceeds from his life insurance policy. The district court dismissed all of Mowbray's claims but one, against Officer George Gavito.

Mowbray appeals several FED. R. CIV. P. 12(b)(6) dismissals and a summary judgment based on prosecutorial immunity, absolute witness immunity, and qualified immunity, and a dismissal based on *res judicata*. Gavito appeals a denial of summary judgment based on qualified immunity. We affirm the dismissals and summary judgment that Mowbray

2

challenges, but we reverse the denial of summary judgment to Gavito and render judgment for him.

## I.

One night in September 1987, Mowbray was lying in bed with her husband, Bill Mowbray, when he was shot. Mowbray claimed that her husband had committed suicide; at least twice before, he had attempted suicide, once by shooting himself. Bill Mowbray's car dealership was on the brink of failure, and apparently he had vowed to kill himself rather than face jail for tax evasion or commercial fraud.

Estelle Mauricio, a reserve deputy sheriff, was the first to arrive at the residence after the shooting. She testified that she found the deceased still alive, shot through the head, and lying on his left side with the bed covers pulled up to his shoulder. The bullet had entered the right side of his head, exited the left, and wounded his left hand, which was under his head with a pillow between his head and left hand. His right hand was lying across his chest under the bed covers. No blood or brain matter was on his right hand, and Mauricio never saw his hand being washed at home or in the hospital. Lieutenant George Gavito of the Cameron County Sheriff's Department also was present at the scene.

Dr. Dahm, who conducted the autopsy, stated that if the deceased had shot himself, there would have been blood and brain matter covering his right hand, fingers, and forearm. Finding no blood, Dahm concluded that the death was a murder.

Mowbray was considered a suspect. In early October 1987, Steve Robertson, a lab technician at the Texas Department of Public Safety ("DPS"), met with police officer Mentford "Dusky" Hesskew to discuss the theory that Mowbray had killed her husband. Hesskew was principally employed by the Austin Police Department but also taught classes at the DPS Academy on high impact spatter. Hesskew performed a luminol test on the nightgown Mowbray wore that night to detect the presence of blood. Because luminol reacts to substances other than blood, luminol tests are only presumptive in nature.

On November 3, 1987, Robertson and Hesskew met with prosecutors Benjamin Euresti and Edmund Cyganiewicz and reported that the nightgown had tested positive for blood. On November 9, Robertson conducted two confirmatory blood tests on the nightgown, both of which were negative. At the habeas corpus proceedings, he explained that the negative results could have resulted from the excessive testing the nightgown had already undergone. The tests for the gunshot residue could have destroyed the protein in the blood, and the chemicals sprayed to detect lead residue could have diffused or dissolved the red stains. Robertson never reported these negative results to the district attorneys, Hesskew, or Mowbray's defense counsel.

The prosecution asked Herbert MacDonnell, an expert on blood spatter, to examine Mowbray's nightgown. On November 18, MacDonnell told Euresti and Cyganiewicz that he had found no indication of blood stains or high velocity impact spatter of the sort that would have been present had Mowbray shot her husband while wearing a nightgown. He concluded that if Mowbray had shot her husband, she was not wearing a nightgown at the time.

Cyganiewicz, Euresti, Gavito, Mauricio, and assistant district attorney Luis Saenz prepared a "mock-up" of the shooting scene. The

3

mock-up did not alter MacDonnell's conclusions that he had listed in his report. On December 2, 1987, MacDonnell discussed his report with Gavito and stated that he thought Mowbray had shot her husband while she was naked. The only record of MacDonnell's statement comes from Gavito's deposition testimony. MacDonnell's report was made available to Mowbray's defense counsel ten days to two weeks before trial.

On December 4, 1987, Mowbray was indicted for murder. At trial, the prosecution offered Hesskew's and Robertson's testimony that blood was found on the nightgown; neither side called MacDonnell. Mowbray was convicted and sentenced to life imprisonment. After her petition for writ of habeas corpus was granted and the conviction was set aside, see *Ex Parte Mowbray*, 943 S.W.2d 461 (Tex. Crim. App. 1996), she was acquitted at a second trial.

## II.

Mowbray sued Cameron County, three prosecutors, three police officers, and a county lab technician, alleging conspiracy to violate her civil rights, false imprisonment, malicious prosecution, abuse of process, slander, and intentional infliction of emotional distress. She also sued Jeanne, James, and Margo Mowbray to regain the proceeds of her husband's life insurance policy.

## III.

We review a rule 12(b)(6)[1] dismissal *de novo*, accepting all well-pleaded facts as true. Questions of fact are viewed in the light most favorable to the plaintiff; questions of law are reviewed *de novo*. *Green v. State Bar of Tex.*, 27 F.3d 1083, 1086 (5th Cir. 1994).

Mowbray argues that the district court erred in extending absolute immunity to Euresti, Cyganiewicz, and Saenz, whom she accuses of "shopping for experts," "laboring to sell these experts on their theory," and "rejecting the leading authority in the field . . . and instead selecting an expert who perpetrated junk science." Mowbray also complains that the prosecutors did not turn over exculpatory evidence to the defense until ten days before trial.

Under § 1983, prosecutors are entitled to absolute immunity for acts performed as advocates of the state. *Imbler v. Pachtman*, 424 U.S. 409, 430-31 & n.33 (1976). For "acts of investigation or 'administration,'" prosecutors are entitled to only qualified immunity. *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993). Absolute immunity extends to a prosecutor's actions "'preliminary to the initiation of a prosecution and . . . apart from the courtroom.'" *Id.* at 272 (quoting *Imbler*, 424 U.S. at 431 n.33). This includes a prosecutor's decision on "which witnesses to call and what other evidence to present," *Imbler*, 424 U.S. at 431 n.33, and "an out-of-court 'effort to control the presentation of [a] witness' testimony,'" *Buckley*, 509 U.S. at 272-73 (quoting *Imbler*, 424 U.S. at 430 n.32) (alteration in original).

All the acts Mowbray lists involve the prosecutors' choosing expert witnesses, preparing those witnesses for trial, and performing the state's trial duties. Because these acts fall under the protection of absolute immunity, the district court did not err in dismissing suit as to them.

## IV.

Although Mowbray argues that the court

---

[1] Rule 12(b)(6) authorizes a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).

4

erred in failing to address her slander claim under § 1983, she has not alleged facts sufficient to state a claim. She asserts that after meeting with MacDonnell, Euresti opined that "he was now confident that he could get an indictment." Mowbray never avers that this comment (or any other) deprived her of a constitutional or other federal right; she states only that she "was publicly humiliated and subjected to scorn and ridicule during the investigative phase of the prosecution" and that she was "put through an emotionally damaging trial." Such allegations do not state a claim under § 1983.

## V.

Mowbray contends that the court erred in dismissing her § 1983 claims against Hesskew and Robertson for conspiracy to commit perjury and violation of a duty under *Brady v. Maryland*, 373 U.S. 83 (1963), to disclose exculpatory evidence. Although witnesses are entitled to absolute immunity against § 1983 suits based on their testimony in a criminal trial, *Briscoe v. LaHue*, 460 U.S. 325, 329-31 (1983), it is less certain whether the rule of *Briscoe* extends to claims that a witness entered a pre-trial conspiracy to commit perjury.

Of the eight circuits that have addressed the issue, seven have extended absolute witness immunity.[2] The Second Circuit stands alone in reaching a contrary conclusion.[3]

We find the reasoning of the majority of circuits persuasive. As a matter of logic, "[a] person may not be prosecuted for conspiring to commit an act that he may perform with impunity." *House*, 956 F.2d at 720. Hesskew and Robertson cannot be liable under § 1983 for conspiracy to commit perjury where § 1983 grants them absolute immunity for that act.[4]

Moreover, allowing such conspiracy suits would permit most § 1983 perjury suits to be restyled as § 1983 claims for conspiracy to commit perjury, because "a witness rarely prepares her testimony on her own." *Franklin*, 201 F.3d at 1101-02. Accordingly, we conclude that absolute witness immunity bars § 1983 suits for conspiracy to commit perjury.

Mowbray's second claim, that Hesskew and Robertson violated their duties under *Brady* when they failed to furnish exculpatory *Brady* material to Mowbray's defense counsel, is without merit. *Brady* imposes a duty on prosecutors to share exculpatory evidence with the defense. Mowbray cites, and our re-

---

[2] *Franklin v. Terr*, 201 F.3d 1098, 1101-03 (9th Cir. 2000); *Jones v. Cannon*, 174 F.3d 1271, 1288-89 (11th Cir. 1999); *Watterson v. Page*, 987 F.2d 1, 9 (1st Cir. 1993); *Snelling v. Westhoff*, 972 F.2d 199, 200 (8th Cir. 1992); *House v. Belford*, 956 F.2d 711, 720-21 (7th Cir. 1992); *Miller v. Glanz*, 948 F.2d 1562, 1569 (10th Cir. 1991); *Alioto v. City of Shively*, 835 F.2d 1173, 1174 (6th Cir. 1987).

[3] *San Filippo v. U.S. Trust Co.*, 737 F.2d 246, 254-55 (2d Cir. 1984).

[4] *Cf. Hale v. Townley*, 45 F.3d 914, 920-21 (5th Cir. 1995) (finding that where each state action alleged to have harmed the plaintiff is protected by qualified immunity, there can be no § 1983 suit for conspiracy to violate plaintiff's constitutional rights); *Holloway v Walker*, 765 F.2d 517, 522 (5th Cir. 1985) ("It is a well established rule that where a judge's absolute immunity would protect him from liability for the performance of particular acts, mere allegations that he performed those acts pursuant to a bribe or conspiracy will not be sufficient to avoid the immunity.").

5

search reveals, no case extending *Brady* to police officers or lab technicians.[5] Accordingly, Mowbray has failed to allege an actionable claim against Hesskew or Robertson.

### VI.

Mowbray argues that the district court erred in dismissing her § 1983 claim against James Mowbray for conspiracy to violate her civil rights. While it is possible, in limited circumstances, to allege a § 1983 conspiracy against a private actor, *Brummett v. Camble*, 946 F.2d 1178, 1184-85 (5th Cir. 1991), Mowbray fails to do so. Her complaint consists almost entirely of conclusional allegations. The only facts she provides are that James Mowbray met with the police, answered their questions, and took an interest in the investigation of his brother's death; these do not state a claim under § 1983.

### VII.

Mowbray challenges the dismissal of her § 1983 claims against Cameron County. She first argues that the county is liable for the unconstitutional acts of its final policymakers. Although *Turner v. Upton County*, 915 F.2d 133 (5th Cir. 1990), does allow such suits, Mowbray has alleged constitutional deprivations only against Euresti, Cyganiewicz, Saenz, Hesskew, Gavito, Robertson, and Mauricio—prosecutors, lower level police officers, and a lab technician.

---

[5] Mowbray does not allege, nor do the facts support a finding, that Hesskew and Robertson elicited false evidence and deliberately concealed exculpatory evidence from all parties, including the prosecution. *Cf. Geter v. Fortenberry*, 849 F.2d 1550, 1558 (5th Cir. 1988) (concluding such allegations defeat a police officer's qualified immunity under § 1983).

The sheriff is the county's final policymaker in this context. *Id.* at 136. The district attorney, "when acting in the prosecutorial capacity [or] instituting criminal proceedings to enforce state law," is not. *Esteves v. Brock*, 106 F.3d 674, 678 (5th Cir. 1997). Mowbray has alleged no constitutional deprivation against the county sheriff, and her allegations against the prosecutors involve only actions as state officers; accordingly, the district court did not err in dismissing her *Turner* claim.

Mowbray also argues that the county is liable for the unconstitutional acts of its officers because it failed to train them on their *Brady* duties. *See City of Canton v. Harris*, 489 U.S. 378 (1989). Because Euresti, Cyganiewicz, and Saenz are state officers, the county cannot be liable for a failure to train them. For Hesskew, Gavito, Robertson, and Mauricio, Mowbray fails to allege a constitutional deprivation and thus fails to state a claim under § 1983. As discussed *supra*, neither police officers nor lab technicians have a *Brady* duty to disclose exculpatory information.

### VIII.

We review a grant or denial of summary judgment *de novo*, *NCNB Tex. Nat'l Bank v. Johnson*, 11 F.3d 1260, 1264 (5th Cir. 1994), applying the same standard as did the district court, *Deas v. River W., L.P.*, 152 F.3d 471, 475 (5th Cir. 1998). "Summary judgment is proper when no issue of material fact exists and the moving party is entitled to judgment as a matter of law. Questions of fact are viewed in the light most favorable to the nonmovant and questions of law are reviewed de novo." *Id.*

Mowbray argues that the court erred in granting summary judgment for Mauricio on the § 1983 claims that Mauricio fabricated trial testimony and failed to disclose exculpa-

tory evidence. Absolute witness immunity insulates Mauricio from the § 1983 perjury claim, so the district court was correct to dismiss it under rule 12(b)(6). *Briscoe*, 460 U.S. at 329-31.

For the failure to disclose claim, Mowbray provides only conclusional allegations. Her brief concedes that there is no factual basis for her claim and that she has only suspicion that Mauricio knew of exculpatory evidence. Mauricio, on the other hand, submitted an affidavit attesting that she knew of no exculpatory evidence. Consequently, the court did not err in granting summary judgment for Mauricio.[6]

## IX.
### A.

Gavito contends that the court erred in denying his motion for summary judgment on qualified immunity grounds. As an initial matter, we must verify our jurisdiction over this appeal. *Mosley v. Cozby*, 813 F.2d 659, 660 (5th Cir. 1987).

"[D]istrict court orders denying summary judgment on the basis of qualified immunity are immediately appealable under the collateral order doctrine, when based on an issue of law." *Cantu v. Rocha*, 77 F.3d 795, 802 (5th Cir. 1996). Orders "are based on an issue of law when they concern only application of established legal principles, such as whether an official's conduct was objectively reasonable in light of clearly established law, to a given . .

---

[6] Further, as discussed *supra*, police officers have no duty under *Brady* to disclose exculpatory evidence to defense counsel. Even had Mowbray alleged facts showing that Mauricio withheld evidence, Mowbray's claim would fail as matter of law.

. set of facts." *Id.* (citing *Johnson v. Jones*, 515 U.S. 304 (1995)).

Mowbray and Gavito rely on the same record in their briefs; the only dispute is whether the district court correctly applied the law of qualified immunity to these facts. We thus conclude we have jurisdiction to hear this appeal.

### B.

Mowbray alleges a § 1983 claim for conspiracy to violate her civil rights, based on (1) failure to disclose exculpatory evidence to Mowbray's defense counsel; (2) manufacture of false evidence; and (3) suppression of evidence. Before we can reach the § 1983 conspiracy claim, we must determine whether qualified immunity applies to each state claim. *Hale v. Townley*, 45 F.3d 914, 920-21 (5th Cir. 1995). If all three acts fall under qualified immunity, there can be no § 1983 conspiracy claim. *Id.*

As a police officer, Gavito enjoys qualified immunity for his official acts. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To overcome qualified immunity, Mowbray must show Gavito (1) violated a constitutional right that (2) was clearly established at the time of the violation (3) through conduct that was objectively unreasonable. *Kipps v. Caillier*, 197 F.3d 765, 768 (5th Cir. 1999), *cert. denied*, 121 S. Ct. 52 (2000).

Mowbray claims that Gavito had a *Brady* duty to tell defense counsel about his lunch meeting with MacDonnell at which MacDonnell stated he believed Mowbray had shot her husband while not wearing a nightgown. As we have said, even if MacDonnell's statement were exculpatory, police officers have no constitutional duty under *Brady* to disclose exculpatory evidence to defense counsel. For

7

her assertion that Gavito manufactured false evidence and suppressed evidence, Mowbray provides only conclusional allegations.

Even under a generous reading of Mowbray's complaint and brief, the only possible factual basis she alleges is that Gavito participated in a "mock-up" of the crime scene and arrested her pursuant to a warrant. But Mowbray provides no evidence that Gavito acted improperly in the mock-up or that there were any constitutional defects in her arrest. She has not shown Gavito violated any constitutional right, much less one clearly established at the time of her prosecution. Therefore, Gavito is entitled to qualified immunity for his actions, and the § 1983 conspiracy claim based on them must fail.

Mowbray also lists a host of state law claims for abuse of process, malicious prosecution, false imprisonment, and intentional infliction of emotional distress. The state law claims, like her § 1983 claim, consist mainly of conclusional allegations.[7] Mowbray complains that Gavito investigated the crime, participated in a mock-up of the crime scene, arrested her, and failed to disclose exculpatory evidence to her defense counsel.

Police officers are entitled to official immunity from suits arising out of performance of (1) discretionary duties (2) in good faith as long as they are (3) acting within their authority. *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex. 1994). The defendant claiming official immunity bears the burden of proving all elements of the defense. *Id.*

---

[7] Because the state law claims arise out of the same set of operative facts as do the federal claims, we have supplemental jurisdiction to hear them. 28 U.S.C. § 1367.

Under Texas law, an officer's investigation of a crime, *Wyse v. Dep't of Pub. Safety*, 733 S.W.2d 224, 227 (Tex. App.—Waco 1986, writ ref'd n.r.e.), and arrest of a suspect, *Dent v. City of Dallas*, 729 S.W.2d 114, 117 (Tex. App.—Dallas 1986, writ ref'd n.r.e.), are considered discretionary duties within police authority. Gavito thus satisfies the first and third criteria for official immunity.

Texas law judges an officer's good faith under the same test federal courts employ for qualified immunity determinations under § 1983. *City of Lancaster*, 883 S.W.2d at 656. Texas courts "look to whether a reasonable official could have believed his or her conduct to be lawful in light of clearly established law and the information possessed by the official at the time the conduct occurred." *Id.* (internal quotation marks and citations omitted). Like qualified immunity, official immunity "protects all but the plainly incompetent or those who knowingly violate the law." *Id.* (internal quotation marks and citations omitted).

As we have stated, there is no evidence that Gavito did anything illegal in investigating the crime, participating in the mock-up, arresting Mowbray, or failing to disclose MacDonnell's statements to defense counsel. Gavito's actions thus are immune from state suit because of official immunity. Because all of Mowbray's claims against Gavito fail as a matter of law, the district court erred in denying Gavito summary judgment.

X.

After Mowbray was convicted, the proceeds from her husband's life insurance policy were divested from her and awarded to the deceased's mother. *Mowbray v. Metro. Life Ins. Co.*, Civ. Ac. No. B-88-107 (S.D. Tex. Apr. 24, 1991). Two years after her conviction was set aside, Mowbray filed a motion

8

in federal court requesting that the 1991 judgment be vacated, that Jeanne Mowbray repay her the life insurance money, and that the court "impose a constructive trust in said moneys so received." The court set aside the 1991 judgment but denied "all further relief prayed for." *Mowbray v. Metro. Life Ins. Co.*, Civ. Ac. No. B-88-107 (S.D. Tex. May 24, 1999).

Mowbray did not appeal the denial of her constructive trust claim. In 1999, she filed her first amended complaint in the instant case, suing James and Margo Mowbray, Jeanne Mowbray's heirs, to impose a constructive trust on the insurance proceeds. The defendants moved to dismiss based on res judicata. The court denied the motion because there was no certified copy of the judgment in the record. Defendants filed a second motion to dismiss, omitting mention of res judicata because the district court had stated it would not consider such a motion. The court granted the motion, raising the issue of res judicata *sua sponte*.

We review a dismissal based on res judicata *de novo*. *Recoveredge L.P. v. Pentecost*, 44 F.3d 1284, 1290 (5th Cir. 1995). We apply federal law to determine the preclusive effect of a federal judgment, even if that judgment was based on state law. *Id.*

### A.

Generally, res judicata is an affirmative defense that must be pleaded, not raised *sua sponte*. FED. R. CIV. P. 8(c). We recognize two limited exceptions to this rule; both apply here. The first exception allows "[d]ismissal by the court sua sponte on res judicata grounds . . . in the interest of judicial economy where both actions were brought before the same court." *Boone v. Kurtz*, 617 F.2d 435, 436 (5th Cir. 1980); *accord United Home Rentals, Inc. v. Tex. Real Estate Comm'n*, 716 F.2d 324, 330 (5th Cir. 1983). Both actions were brought in the same federal district court. Further, like the judgments in *Boone*, the actions are "almost identical," differing only in the defendants' names. The parties do not dispute the facts, so remanding would add nothing to the record and would only consume judicial resources.

The second exception holds that "where all of the relevant facts are contained in the record before us and all are uncontroverted, we may not ignore their legal effect, nor may we decline to consider the application of controlling rules of law to dispositive facts, simply because neither party has seen fit to invite our attention by technically correct and exact pleadings." *Am. Furniture Co. v. Int'l Accommodations Supply*, 721 F.2d 478, 482 (5th Cir. Unit A Mar. 1981). Here the facts are uncontested and the legal outcome unambiguous. Reversal would not lead to a different outcome.

Additionally, the usual concerns preventing a court from raising res judicata *sua sponte* do not apply. Mowbray "can claim no surprise or prejudice." *Id.* She certainly had notice of the prior judgment; she had litigated it just a few months earlier. Nor has she been denied "'the chance to argue . . . why the imposition of an estoppel would be inappropriate.'" *Id.* (quoting *Blonder-Tongue Labs. v. Univ. Found.*, 402 U.S. 313, 350 (1971)). James and Margo Mowbray had filed an earlier motion to dismiss based on res judicata, which Mowbray had ample opportunity to answer.

### B.

Thus concluding that the district court did not err in raising the issue, we address it on the merits. In *American Furniture*, we set forth the requirements for a res judicata de-

9

fense:

> "(1) that the prior judgment must have been rendered by a court of competent jurisdiction; (2) that there must have been a final judgment on the merits; (3) that the parties, or those in privity with them, must be identical in both suits; and (4) that the same cause of action must be involved in both suits."

*Id.* (quoting *Stevenson v. Int'l Paper Co.*, 516 F.2d 103, 108-09 (5th Cir. 1975)).

It is indisputable that all four requirements are satisfied. The 1999 judgment decided the issue, so the district court did not err in dismissing the claim.

In summary, the dismissals and summary judgment entered against Mowbray are AFFIRMED, and the denial of summary judgment in favor of Gavito is REVERSED, and judgment is RENDERED for him. All outstanding motions are denied.

10